MAX BEREN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY BEREN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20145, 20146.   Promulgated October 30, 1930.

*H. W. Russell, Esq.*, for the petitioners.
*Brooks Fullerton, Esq.*, for the respondent.

OPINION.

TRAMMELL : The question we are called upon to decide is the amount of the oil deposit or reserve applicable to each petitioner's one-eighth interest at the time the oil properties were acquired by them and their associates in June, 1920. The petitioners contend that the amount was 14,942 barrels, the amount used by them in computing the deduction taken for depletion in their returns. The respondent contends that it was 47,744 barrels, the amount used by him in determining the deficiencies.

In support of their contention the petitioners rely on the fact that in computing the estimated oil reserve used by them in determining the deduction taken for depletion they used figures in an estimated future production table for the Augusta District, Butler County, Kans., as set forth in the Manual for the Oil and Gas Industry. In a foreword to the manual it is expressly stated that the tables appearing in the manual were intended as a *suggestion* for the guidance of the taxpayer in the computation of his depletion allowance, but that they are not to be applied indiscriminately to specific properties and that the Treasury Department is in no way committed to accept estimates based upon them. With respect to the methods of estimating recoverable reserves it is stated on page 27 of the manual that the Treasury Department does not prescribe any particular method of estimating recoverable reserves, but that the methods described therein are applicable to a wide variety of conditions and are inserted as a suggestion.

From the foregoing we think it is clear that in issuing the Manual for the Oil and Gas Industry the Treasury Department intended for the matter set forth therein to be suggestive only and not determinative as the petitioners now urge. The contention of the petitioners, therefore, is not well founded.

In making their selection of figures from the manual, it appears that the petitioners took into consideration the production of the oil properties only for the period in 1920 subsequent to the acquisition of the leases by them and their associates, notwithstanding the fact that the properties had been producing steadily for about four years. On the other hand the respondent's estimate of the reserve or deposit is based on all the production data available from the time the wells were brought in down to the time the petitioners' returns were due, March 15, 1921, which date was two days before they were filed. The

respondent's estimate clearly was determined on a more comprehensive basis than that of the petitioners, and consequently more likely to approach the actual amount of the deposit or reserve than that determined by them.

While facts occurring subsequent to the time the petitioners filed their returns may not be used in estimating the amount of the deposit or reserve of oil in the properties at the time of acquisition of the leases, *Philadelphia Quartz Co.*, 13 B. T. A. 1146, and *Sterling Coal Co., Ltd.*, 8 B. T. A. 549, such facts may be used in checking or corroborating the estimate made. *McAlester-Edwards Coal Co.*, 10 B. T. A. 1368. The respondent has estimated each petitioner's share of the deposit or reserve to be 47,744 barrels as at the date of the acquisition of the leases in June, 1920. Each petitioner's share of the actual production from June 15, 1920, to the end of 1924, the last year for which the amount of production was put in evidence, was 39,955 barrels. In view of this we do not think it could be said that the respondent's estimate was unreasonable. It certainly comes more nearly to approaching the actual amount of the reserve now known to have been in the properties than the petitioner's estimate of 14,942 barrels.

The petitioners are contesting the estimate made by the respondent and the burden is upon them to show that such estimate is erroneous. From a consideration of all the evidence we do not think that they have sustained this burden. Accordingly, the respondent's estimate is sustained.

*Judgment will be entered under Rule 50.*